UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:14-CV-169-TLS |
| | ) |
| WESLEY YEAKLE, individually and d/b/a | ) |
| Yeakle's Sports Bar and Grill, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

The Plaintiff, J & J Sports Productions, Inc., alleges that the Defendants, Wesley Yeakle and Yeakle's Sports Bar and Grill, Inc., violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting a professional boxing match. This matter is now before the Court on the Plaintiff's Motion for Summary Judgment [ECF No. 17]. For the reasons stated in this Opinion and Order, the Court finds that the Plaintiff is entitled to judgment as a matter of law.

**BACKGROUND**

Except where noted, the following facts are undisputed. The Plaintiff is a company that licenses sports programming for viewing by television audiences. Defendant Wesley Yeakle is an officer of Defendant Yeakle's Sports Bar and Grill, Inc., which owns and operates Yeakle's Sports Bar and Grill, a commercial establishment located in Marion, Indiana. Yeakle is also the principal owner and manager of Yeakle's Sports Bar and Grill, as well as an individual specifically identified on its liquor license (License # RR2704661). The Plaintiff possessed the exclusive nationwide commercial distribution rights to the Manny Pacquiao versus Timothy Bradley, WBO World Welterweight Championship Fight Program ("Pacquiao Program") that

was broadcast nationwide via closed-circuit television on Saturday, June 9, 2012.[1]

On June 5, 2014, the Plaintiff filed a Complaint [ECF No. 1] alleging that it entered into sub-licensing agreements with various commercial establishments to permit public exhibition of the Pacquiao Program, and that the Defendants unlawfully intercepted and exhibited the Pacquiao Program without the Plaintiff's authorization, in violation of 47 U.S.C. §§ 553 and 605. The Plaintiff seeks damages, as well as costs and attorneys' fees. On August 14, 2015, the Plaintiff filed a Motion for Summary Judgment [ECF No. 17], along with a Memorandum in Support [ECF No. 17-1], and the Affidavits of Joseph M. Gagliardi [ECF No. 17-2] and Michael Anderson [ECF No. 17-3]. The Defendant filed a Response [ECF No. 19] on October 30, 2015, along with the Affidavit of Yeakle; and the Plaintiff filed a Reply on November 16, 2015. The Motion is now fully briefed and ripe for ruling.[2]

---

[1] The Plaintiff's Complaint [ECF No. 1] contains what appear to be typographical errors as to the date of the Pacquiao Program. *See, e.g.*, Compl. ¶ 11 (alleging that it was broadcast on May 7, 2011); *id.* ¶ 16 (alleging that it was broadcast on June 6, 2012). The evidence submitted into the record, however, shows that the Pacquiao Program actually occurred on June 9, 2012, *see, e.g.,* Gagliardi Aff., Anderson Aff., and is not genuinely disputed by the parties. Although "best practices" dictates that the Plaintiff should have sought leave to amend the complaint prior to filing a motion for summary judgment, the Court, for the sake of economy and efficiency, deems the Plaintiff's Complaint to be "constructively amended" to allege the date of the Pacquiao Program as June 9, 2012. *See Luckett v. Conlan*, 561 F. Supp. 2d 970, 974 (N.D. Ill. 2008) ("A complaint merely serves to put defendants on notice, and should be freely amended or constructively amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant.") (quotation marks and citation omitted).

[2] The Plaintiff has now indicated that it is not seeking liability under § 553. (Mot. for Summ. J. 6, ECF No. 17.) The Court further notes that although the Plaintiff's Memorandum in Support of Summary Judgment [ECF No. 17-1] briefly references a tort claim for conversion—a claim raised in the Plaintiff's Complaint—this claim is not supported by any pertinent authority or analysis, and is therefore waived. *See J & J Sports Prods., Inc. v. Zarco*, No. 1:12–cv–01642–TAB–JMS, 2013 WL 4829222, at *4 (S.D. Ind. Sept. 9, 2013) (citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived.")).

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## DISCUSSION

### A. Violation of 47 U.S.C. § 605

Section 605 of the Federal Communications Act of 1934 provides, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Section 605 is "generally interpreted to prohibit commercial establishments from intercepting and broadcasting satellite and cable television programming." *J & J Sports Prods., Inc. v. Perez*, No. 12 C 8256, 2014 WL 3805818, at *2 (N.D. Ill. Aug. 1, 2014) (citing, in part, *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996)). To establish liability, the plaintiff must demonstrate that the defendant unlawfully exhibited, published, or divulged the plaintiff's privileged communication. § 605(a). Because § 605 is a strict liability statute, the question as to whether the defendant acted knowingly is only relevant as to damages. *Id.*; *see also, e.g., J & J Sports Prods., Inc. v. Carranza*, No. 1:13–cv–01467–DML–TWP, 2015 WL 1417894, at *3 (S.D. Ind. Mar. 27, 2015) (finding that the defendant's knowledge of a violation is irrelevant for determining liability).

Moreover, for a defendant to be liable under § 605 in his or her individual capacity, the plaintiff must demonstrate that the individual defendant had "a right and ability to supervise the

violations and that he had a strong financial interest in such activities." *J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, No. 2:09–03141–DCN–RSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010) (quotation marks and citation omitted); *see, e.g., Joe Hand Promotions, Inc. v. Rizzi*, No. 12–2526, 2013 WL 6243824, at *5 (W.D. Tenn. Dec. 3, 2013) (finding that the individual defendant "owns and manages the Establishment, which gave him the right and ability to supervise the violations and the requisite financial interest, notwithstanding his decision not to be present during the Events.").

Here, the Plaintiff has presented the Affidavit of Joseph M. Gagliardi, the President of J & J Sports Productions, Inc., in which he asserts that the Plaintiff possessed the exclusive nationwide commercial distribution rights to the Pacquiao Program, which was broadcast on June 9, 2012; and that at no time did the Defendants lawfully license the exhibition of the Pacquiao Program. (Gagliardi Aff. 3–4, ECF No. 17-2.) The Plaintiff has also submitted the Affidavit of Michael Anderson, an auditor for Audit Masters, in which he asserts that on June 9, 2012, at approximately 11:49 PM, he entered Yeakle's Sports Bar and Grill and observed the Pacquiao Program being displayed on three television monitors in the presence of 42 people. (Anderson Aff., ECF No. 17-3.)

To contest liability, the Defendants have submitted a single piece of evidence: Yeakle's Affidavit, in which he states, in relevant part, that "other than the bare assertions of Michael Anderson . . . I have seen no evidence that the [Pacquiao Program] was shown in my establishment on or about June 9, 2012." (Yeakle Aff. 1.) Yeakle goes on to state that "I deny that I directed any employee of mine to intercept [the Pacquiao Program]. I have no knowledge that Yeakle's Sports Bar showed the Plaintiff's program on the date alleged." (*Id.*) Yeakle also

admits that he is the principal owner and manager of Yeakle's Sports Bar and Grill. (*Id.*)

Contrary to the assertion raised in the Defendants' Brief, the Yeakle Affidavit does not "den[y]" that an illegal interception and exhibition of the Pacquiao Program occurred on June 9, 2012. *See* Def.'s Br. 2 (citing Yeakle Aff. ¶ 6). More accurately, the Affidavit amounts to nothing more than Yeakle's assertion that he had "no knowledge" as to whether the Plaintiff's allegations are true. As the Court explained above, § 605 is a strict liability statute, and the question as to whether Yeakle, the principal owner and manager of Yeakle's Sports Bar and Grill, had knowledge of the violation (or, for that matter, whether he directed one of his employees to illegally intercept and exhibit the Pacquiao Program) is only relevant as to damages. *See, e.g., Perez*, 2014 WL 3805818, at *2; *Carranza*, 2015 WL 1417894, at *3; *see also Perez*, 2014 WL 3805818, at *2 ("[A]n individual that has the right and ability to supervise the activity and a financial interest in it, or an individual who personally participated in the activity may be liable.") (citing *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992).

The Defendants are also incorrect to suggest that the uncontradicted affidavits of Gagliardi and Anderson are insufficient proof at the summary judgment stage. Pursuant to Federal Rule of Civil Procedure 56(c)(4), an affidavit may be used to support summary judgment so long as it is based "on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Defendants do not take issue with the affiants' personal knowledge or their competence to testify to the matters stated in their respective affidavits, or present any

challenges as to whether their statements would be admissible at trial.[3]

Again, summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor, *Goodman*, 621 F.3d at 654 (7th Cir. 2010), and absent a genuine issue of material fact, summary judgment is warranted. Because the evidence of record shows (1) that Defendant Yeakle's Sports Bar and Grill, Inc. owns and operates Yeakle's Sports Bar and Grill; (2) that Defendant Wesley Yeakle is the principal owner and manager of Yeakle's Sports Bar and Grill; (3) that the Plaintiff possessed the exclusive nationwide commercial distribution rights to the Pacquiao Program, which was broadcast on June 9, 2012; (4) that at no time did the Defendants lawfully license the exhibition of the Pacquiao Program; and (5) that Michael Anderson entered Yeakle's Sports Bar on June 9, 2012, at approximately 11:49 PM, and observed the Pacquiao Program being displayed on three television monitors in the presence of 42 people, the Court finds that the Defendants are liable under § 605, and that the Plaintiff is entitled to judgment as a matter of law.

**B.     Damages, Costs, and Attorney's Fees**

Under § 605, a plaintiff may recover actual or statutory damages. 47 U.S.C.

---

[3]The Defendants also contend that summary judgment should be denied because of apparent typographical errors in the Plaintiff's Complaint, which the Court surmises are the result of much copy-and-paste work. The Defendants specifically note that the "Complaint and designated materials allege three different dates that the [Pacquiao Program] occurred, an obvious impossibility." (Def.'s Br. 2.) But as the Court explained earlier, the evidence in the record establishes that the Pacquiao Program occurred on June 9, 2012, *see, e.g.*, Gagliardi Aff., Anderson Aff, as this fact is not genuinely disputed by the parties. The Defendants also note that the Complaint identifies Loida Chavarria as an employee of the Defendants—a fact that Yeakle expressly denies. (Yeakle Aff. 1.) However, given the claims and evidence presented, the Court fails to grasp how this fact is material to the Defendants' liability under § 605.

§ 605(e)(3)(C)(i)(II). The Plaintiff has requested $10,000 in statutory damages, the maximum permitted under the statute, *id.*, along with enhanced damages under § 605(e)(3)(C)(ii), which permits an increase in damages of up to $100,000 where "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." § 605(e)(3)(C)(ii).[4] The Plaintiff also requests costs and attorney's fees, which it is entitled to under § 605(e)(3)(B)(iii).

However, because the Defendants did not address damages, costs, or attorney's fees, in their Brief in Opposition to Summary Judgment [ECF No. 19], the Court will set this matter for a telephonic conference to inquire whether these issues will necessitate an evidentiary hearing and/or additional briefing.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Plaintiff's Motion for Summary Judgment [ECF No. 17] as to liability under 47 U.S.C. § 605, and SETS a telephonic status conference for Monday, May 9, 2016, at 1:30 PM. The Court will initiate the call.

SO ORDERED on March 24, 2016.

                                       s/ Theresa L. Springmann
                                       THERESA L. SPRINGMANN
                                       UNITED STATES DISTRICT COURT

---

[4]The Court notes that § 605 also allows for minimum damages "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." § 605(e)(3)(C)(iii).