# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| J & J SPORTS PRODUCTIONS, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:14-CV-169-TLS |
| WESLEY YEAKLE, individually and d/b/a Yeakle's Sports Bar and Grill Inc., et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s Request for Damages Award [ECF No. 30], filed on February 10, 2017. The Defendants Wesley Yeakle and Yeakle's Sports Bar and Grill, Inc. filed a Memorandum Regarding Damages [ECF No. 31] on March 17, 2017, and the Plaintiff's Reply [ECF No. 32] was entered on March 30, 2017. The Plaintiff requests an award of $10,000 in statutory damages, for this Court to exercise its discretion to award enhanced damages, and to award $1,530.75 in attorney's fees[1] and $1,085.00 in costs. (Pl.'s Reply 8, ECF No. 32.) The Defendants argue that "[t]here are no facts in the record . . . which would support the Plaintiff's request for maximum statutory damages, or any request for enhanced damages." (Def.'s Mem. 1, ECF No. 31.) Instead, the Defendants urge the Court to issue minimum statutory damages of $1,000.00 against the corporate Defendant and no

---

[1] The Plaintiff initially requested $1,316.26 in attorney's fees, but increased its request after "incurr[ing] additional attorney's fees in preparing [its R]eply to Defendants' Memorandum." (Pl.'s Reply 7.)

damages as to Defendant Wesley Yeakle. (*Id.* at 2.) Lastly, the Defendants agree with the entry of the Plaintiff's requested attorney's fees[2] and costs.

## BACKGROUND

The facts underlying this case were detailed in this Court's March 24, 2016, Opinion and Order [ECF No. 21], and so only a brief recitation is necessary.

> On June 5, 2014, the Plaintiff filed a Complaint [ECF No. 1] alleging that it entered into sub-licensing agreements with various commercial establishments to permit public exhibition of the Pacquiao Program, and that the Defendants unlawfully intercepted and exhibited the Pacquiao Program without the Plaintiff's authorization, in violation of 47 U.S.C. §§ 553 and 605.

(Op. & Order 2, ECF No. 21.) On August 14, 2015, the Plaintiff filed a Motion for Summary Judgment [ECF No. 17] as to the Defendants' liability under 47 U.S.C. § 605.[3] The Plaintiff submitted evidence from an auditor who "assert[ed] that on June 9, 2012, at approximately 11:49 PM, he entered Yeakle's Sports Bar and Grill and observed the Pacquiao Program being displayed on three television monitors in the presence of 42 people." (*Id.* at 5.) To contest liability, the Defendants submitted an Affidavit from Defendant Wesley Yeakle, in which he stated that "other than the bare assertions of [the auditor] . . . I have seen no evidence that the [Pacquiao] program was shown in my establishment on or about June 9, 2012." (Yeakle Aff. ¶ 5, ECF No. 19-1.) However, because § 605 is a strict liability statute, the Defendants' proffered evidence was only relevant to damages, and so the Court granted summary judgment in favor of the Plaintiff on March 24, 2016. The Court postponed ruling on damages, costs, and attorney's fees pending additional briefing from the parties.

---

[2] The Defendants agreed to the Plaintiff's initial amount requested for attorney's fees, which was calculated before the Plaintiff prepared its Reply brief, but the Court assumes that the Defendants would agree to including the fees for preparing the Reply brief.

[3] The Plaintiff did not pursue liability under § 553 in its Motion. (Op. & Order 2 n.2.)

ANALYSIS

A.   **Damages Under § 605**

Under § 605, the claimant "may elect actual damages or statutory damages." The Plaintiff elects the latter. (*See* Pls.' Req. Damages 3, ECF No. 30.) The statute states that "the party aggrieved may recover an award of statutory damages for each violation . . . of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, the Plaintiff requests that this Court "utilize its discretion to make an award of enhanced damages that both sufficiently compensates Plaintiff and functions as an effective deterrent." (Pls.' Req. 3–4.) Under the statute, when a "court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation" of § 605. 47 U.S.C. § 605(e)(3)(C)(ii).

"It is well established that the district courts have broad discretion to determine awards in cases like this." *J & J Sports Prods., Inc. v. Navarro*, — F. Supp. 3d —, at *6 (N.D. Ind. 2017) (first citing *J & J Sports Prods., Inc. v. Turrubiartes*, No. 1:11-CV-1496, 2013 WL 3878740, at *2 (S.D. Ind. July 26, 2013); then citing *J & J Sports Prods., Inc. v. Elonia Garcia, Bly, Inc.*, No. 1:13-CV-743, 2016 WL 4479516, at *2 (S.D. Ind. Aug. 24, 2016)). There are three main ways that courts calculate statutory and enhanced damages for violations of § 605. "Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show," while others "have awarded a flat sum for each violation." *E.g.*, *id.* (N.D. Ind. 2017) (quoting *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 959–61 (E.D. Wis. 2001) (listing cases)). Still more have calculated statutory damages under a

"licensing" method, based on "the amount [the violator] would have paid to acquire the rights . . . had [they] purchased those rights legitimately." *E.g., id.* (citing *J & J Sports Prods., Inc. v. Sangria's Mexican Grill 2 LLC*, No. 15-C-656, 2015 WL 5824900, at *3 (E.D. Wis. Oct. 6, 2015)).

The Plaintiff argues that this Court should award maximum statutory damages of $10,000.00 "because it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained" because of the Defendants' conduct. (Pl.'s Req. 2.) This amount would conform to Congress's intent to deter piracy of closed-circuit programming, as such deterrence can only be achieved "by the imposition of the maximum statutory damage award." (Pl.'s Reply 3.) By contrast, calculating damages on a per-patron basis "may do little to prevent such unlawful conduct in the future." (*Id.* at 6 (quoting *Kingvision*, 544 F. Supp. 2d at 1184).) Also, requiring the violator "to pay the price it would have been charged to obtain legal authorization . . . does nothing to" fulfill congressional intent. (*Id.* at 7 (quoting *Entm't by J & J , Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002).) To support their argument that "statutory damages should be near the minimum range," the Defendants rely upon the small "audience of 42 persons" who were at the bar and watched the program.

> There is no evidence that a cover charge was collected, or that the event was advertised by the bar. There is no evidence that Defendant Wesley Yeakle was present in the bar at the time of the unauthorized broadcast, or that he personally directed any intercept of the broadcast. . . . [There w]as no finding as to whether the Pacquiao Program was marketed or publicized by the Defendants in order to attract a crowd to the bar.

(Def.'s Mem. 1–2.) However, the Defendants do not argue in favor of any one formula for this Court to employ in calculating statutory damages.

4

But a formula is not the only variable in the statutory damages equation. As a fellow Judge within this District has explained,

> There is another important factor the Court must consider, and it is usually the most challenging aspect of cases like these. While defendants who "pirate" licensed broadcasts should be made to pay up, the Court is also charged with balancing equities; that is, with fashioning an award that compensates the Plaintiff without impairing the Defendants' ability to continue operating their business. "[C]ourts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." . . . This factor becomes magnified when the defendants are small business owners, as is the case here, whose businesses could be crushed even by the imposition of what J & J Sports might consider a paltry amount. At the same time, the strict liability nature of the applicable statutes and their mandate that courts impose some amount of damages for violations presents a Solomon-like dilemma for the Court.

*Navarro*, — F. Supp. 3d —, at *8. Based on the factual circumstances of this case, the Court grants the minimum allowable statutory damages award under § 605(e)(3)(C)(i)(II) of $1,000.00. "The Court concludes that this award will compensate J & J Sports while also serving a deterrent effect. A greater award is simply not supported by the evidence or circumstances of this case." *Id.*

Next, the Plaintiff requests that this Court exercise its discretion to award enhanced damages, while the Defendants argue that "[t]here are no facts in the record . . . which would support . . . any request for enhanced damages." (Def.'s Mem. 1, ECF No. 31.) The Court agrees with the Defendants because there is no evidence upon which to find that the Defendants' actions were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). No cover charge was collected and there was no advertising or marketing campaign to show that the Pacquiao match would be played at the bar. In his Affidavit, Defendant Wesley Yeakle stated that had "no knowledge that Yeakle's Sports

Bar showed the [Pacquiao] program" and therefore he neither authorized nor supervised the playing of the Pacquiao match. (Yeakle Aff. ¶ 6.)[4] The Plaintiff's argument in favor of enhanced damages is merely conclusory: "there is little chance that the Defendants did not act willfully in intercepting" the Pacquiao program because the Court already found that the Defendants violated § 605. (Pl.'s Req. 3.) Such an argument is both conclusory and misreads the statute, as it would render superfluous the bifurcation of damages provisions within the statute by automatically qualifying any § 605 violation for enhanced damages.

**B.   Attorney's Fees and Costs**

When the Court finds a violation of § 605, the prevailing party is entitled to "the recovery of full costs, including awarding reasonable attorneys' fees." 47 U.S.C. § 605(e)(3)(B). The Plaintiff requests $1,530.75 in attorney's fees and $1,085.00 in costs, and the Defendants agree with the entry of the Plaintiff's requested attorney's fees and costs. Plaintiff's counsel submitted an Affidavit [ECF No. 32-2] and Invoice [ECF No. 32-3] that detail the fees and costs incurred in the course of the litigation, which the Court has reviewed. The Court finds that the request for fees and costs is reasonable under the circumstances of this case, and awards the Plaintiff the sum of $1,530.75 in attorney's fees and $1,085.00 in costs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Plaintiff's Request for Damages [ECF No. 30]. The Court **DIRECTS** the Clerk to enter judgment in favor the Plaintiff and against the

---

[4] Indeed, the Court's grant of summary judgment did not find that any one individual had masterminded the piracy of the Pacquiao broadcast, only that the evidence showed that on the night of the Pacquiao fight the Defendants did not possess a license to show the fight in the establishment.

Defendants in an amount of $1,000 in statutory damages and no enhanced damages, and to award Plaintiff's counsel $1,530.75 in attorney's fees and $1,085.00 in costs.

SO ORDERED on May 11, 2017.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT